opinion of the court
Frank M. Klinger, J.
The case at bar charges a violation of section 110 of the city zoning ordinance which states that no structure shall be occupied or used unless in conformity with the regulations for the district in which it is located. The charge is that the property was being used between February 4 through February 11, 1981 as a dormitory in violation of sections 440 and 441 of the Zoning Ordinance of the City of Oswego.
Defendant’s structure at 156 West Seneca Street is zoned R-3 residential. Section 440 permits one-family and two-family dwellings in an R-3 district as of right. A dormitory is not permitted in an R-3 district as of right but is permitted if a special permit is issued pursuant to section 441.
A dormitory is defined as: “A building or part thereof used as group quarters for unrelated individuals sharing common cooking, social and hygenic facilities. Includes fraternity and sorority houses.” The testimony of the wit *393 ness, Margaret Clancy, witness, Angelo Murabito, and the witness, Rose Murabito, were all clear to the effect that the premises in question were during the time in question rented to five unrelated individuals who lived there and shared common cooking, social and hygenic facilities.
This being so, I find as a fact which was proven before this court beyond a reasonable doubt, that the defendant between February 4 and February 11, 1981 did in fact operate a dormitory at 156 West Seneca Street as is alleged in the accusatory instrument.
According to the witness Clancy, the defendant told her that he had obtained a permit for a dormitory. In fact, the defendant did apply for a permit to operate the residence in question as a dormitory. For reasons well stated in the decision of the zoning board of appeals, the board denied this permit.
The zoning board of appeals considered the question as to whether a special permit was required for a dormitory and whether the property can continue to be used as a dormitory contrary to City Engineer Leotta’s determination of March 1,1979. The board held that a special permit was, in fact, required and ordered that the property not be used as a dormitory.
The defendant chose not to appeal the decision of the zoning board of appeals and he cannot now, therefore, attack its validity in a criminal proceeding. (People v Clute, 47 Misc 2d 1005, affd 18 NY2d 999; 2 Anderson, New York Zoning Law and Practice [2d ed], § 24.07.) The decision has become “the law of the case”.
In any event, the board’s decision was correct. The defendant may not use the property as a dormitory without a special permit. The application for such a permit was denied. No appeal was taken. Therefore, the defendant clearly operated a dormitory in defiance of the zoning board’s decision without a permit in violation of sections 110, 440 and 441 of the city zoning ordinance.
The defendant argues that the prosecutor is required to prove beyond a reasonable doubt that the tenants were unrelated. True enough. The witness Clancy so testified and I so find.
*394 Defendant, however, aptly points out that the statute does not define “related”. Therefore, under the Biblical or creationist theory of creation, all of us are descended from Adam and Eve and are, therefore, “related”. Hence, if we accept the defendant’s interpretation and a literal interpretation of the Bible, the zoning ordinance is totally meaningless. No one could possibly house more than two “unrelated” individuals since all people under the Biblical theory are “related”.
Even under Darwinian or evolutionary theory, however, no credible witness could ever testify with certainty that he or she could not possibly be distantly related to someone else. Therefore, by the defendant’s interpretation under either theory of creation, no one could possibly violate this section of the zoning ordinance.
Yet the United States Supreme Court in the case of Village of Belle Terre v Boraas (416 US 1) specifically upheld the constitutionality of an ordinance worded identically to that of the ordinance of the City of Oswego. There is certainly no indication in that decision that the United States Supreme Court considered that ordinance to be totally meaningless. Indeed the United States Supreme Court specifically praised this ordinance by contrast to that of Moore v East Cleveland (431 US 494).
The general rules of statutory construction are to interpret statutes in a manner so as to give legal effect to their obvious intent — not to render them totally useless.
“Statutes will not be construed so as to render them ineffective.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 144.)
The annotation to this section supported by dozens of cases cited therein, too numerous to mention, is as follows:
“In the course of construing a statute the court must assume that every provision thereof was intended for some useful purpose, and that an enforceable result was intended by the statute. The courts will not impute to lawmakers a futile and frivolous intent, and the intention is not lightly to be imputed to the Legislature of solemnly enacting a statute which is ineffective. Statutes are to be interpreted workably, and a statute must not be construed *395 in such a way that would result in the Legislature having performed a useless or vain act.
“A construction which would render a statute ineffective must be avoided, and as between two constructions of an act, one of which renders it practically nugatory and the other enables the evident purposes of the Legislature to be effectuated, the latter is preferred. No part of an original act or an amendment thereto is to be held inoperative, if another construction will not conflict with the plain import of the language used.” (McKinney’s Cons Laws of NY, Book 1, Statutes, pp 291-293.)
Other rules of interpretation under McKinney’s Consolidated Laws of New York (Book 1, Statutes) are:
Section 143: “Generally, statutes will be given a reasonable construction, it being presumed that a reasonable result was intended by the Legislature.”
Section 92: “The primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature.”
Section 94: “The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction.”
Section 95: “The courts in construing a statute should consider the mischief sought to be remedied by the new legislation, and they should construe the act in question so as to suppress the evil and advance the remedy.”
Section 96: “A basic consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment, and that construction is to be preferred which furthers the object, spirit and purpose of the statute.”
In ordinances where the definition of family is not defined, then the courts have held that it is up to the discretion of each particular court or Judge to ascertain the meaning of family. In such a situation, courts will consider both the size of its group and the reasons its members have for living together. (See 2 Rathkopf, Law. of Zoning and Planning, § 17A.03, subd [2], par [a].)
*396 It was obviously the intent of the common council to prohibit occupancy by more than two persons who do not have a known relationship to each other. Indeed the council specifically reduced the allowable numbers of unrelated persons from 5 to 2 by amendment effective April 24,1978 thereby redefining family in the manner further indicating their obvious intent to limit such occupancy.
I interpret “related” in the Oswego city ordinance to mean a known relationship (to whatever degree, we need not here decide) — not to mean any possible theoretical relationship, however distant.
During the dates charged, there were five unrelated people living at 156 West Seneca Street, all sharing the same kitchen, as well as other social and hygenic facilities and living together as a single housekeeping unit. The defendant, therefore, has not proven that he had a “one family dwelling” or “two family dwelling” within the meaning of the statute, during the dates charged. “Family” is defined as: “One or more persons related by blood, adoption or marriage, living or cooking together as a single housekeeping unit exclusive of household servants. A number of persons but not exceeding 2 living and cooking together as a single housekeeping unit though not related by blood, adoption or marriage shall be deemed to constitute a family.”
Lastly, we get to the question whether or not the defendant had a prior nonconforming use, commonly known as the “grandfather clause”.
A prior nonconforming use is an affirmative defense to be proven by the defendant. Defendant offered no proof as to its existence, except that counsel stipulated to the facts as found by the zoning board of appeals in its decision. The board found that “the non-conforming boarding/rooming house use has been abandoned by Mr. Waring for an uninterrupted period of one calendar year”.
As a matter of law, abandonment of a nonconforming use extinguishes the defendant’s legal right to that use. (See Zoning Ordinance of City of Oswego, § 250.)
The defendant, therefore, must comply with section 440 of the current ordinance.
*397 The defendant will appear before this court on Wednesday, July 15, 1981 at 11:30 a.m. for sentence.